UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHNSON CARL ROBERTS, IV,

    Petitioner,

v.                                           CASE NO. 6:03-cv-1809-Orl-19DAB
                                                    (6:03-cr-043-19DAB)

UNITED STATES OF AMERICA,

    Respondent.

_____

**ORDER**

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Johnson Carl Roberts IV (Doc. No. 3). The Government filed a timely response (Doc. No. 6) to the section 2255 motion in compliance with this Court's instructions and with *The Rules Governing Section 2255 Cases in the United States District Courts*. Petitioner filed a reply (Doc. No. 8) to the Government's response.

Petitioner alleges one claim for relief in his motion: that he received ineffective assistance of counsel at sentencing.

*Procedural History*

Petitioner was charged by indictment with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one) and one count of knowingly making a fictitious written statement in the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(2) (count two). (Criminal Case No. 6:03-cr-043-Orl-19DAB, Doc.

No. 1, filed February 12, 2003).[1] On March 28, 2003, pursuant to a written plea agreement (Doc. No. 19), Petitioner entered a plea of guilty to count one of the indictment before United States Magistrate Judge David A. Baker. *See* Criminal Case Doc. No. 18. Magistrate Judge Baker entered a report and recommendation recommending that the guilty plea be accepted and that Petitioner be adjudged guilty and have sentence imposed accordingly (Criminal Case Doc. No. 22). The district court accepted the plea and adjudicated Petitioner guilty of count one of the indictment (Criminal Case Doc. No. 23). A sentencing hearing was conducted, and, on July 2, 2003, the district court entered a Judgment of Conviction, sentencing Petitioner to a 63 month term of imprisonment (Criminal Case Doc. No. 32).[2] Petitioner did not file a direct appeal of his conviction or sentence.

*Claim One*

Petitioner contends that he received ineffective assistance of counsel because his counsel did not present Petitioner or Petitioner's father to testify at sentencing. According to Petitioner, he entered into a plea agreement with the Government that contemplated a base offense level of 20 and a three level reduction for acceptance of responsibility. In the presentence investigation report, the probation office represented that Petitioner had obstructed justice by failing to participate in urinalysis and mental health treatment sessions and that he had absconded. The Court subsequently found that Petitioner had obstructed justice and had not accepted responsibility; therefore, his base offense level was increased two levels for obstruction of justice, and he was not awarded the three level reduction for acceptance of responsibility.

---

[1] Hereinafter Criminal Case No. 6:03-cr-043-Orl-19DAB will be referred to as "Criminal Case."

[2] Count two of the indictment was dismissed on the motion of the United States. *See* Doc. No. 32.

Petitioner contends that he and his father could have provided testimony regarding the following matters:

1. Petitioner was addicted to drugs for the twenty years preceding the date of the offense.

2. In order to obtain money for drugs, Petitioner pawned his father's hunting rifle on June 4, 2002. The rifle had been purchased for Petitioner when it was legal for him to possess it, and it had been in his father's gun cabinet continuously from the time of Petitioner's prior felony conviction until June 4, 2002. The only time Petitioner possessed the gun was when he took it to the pawn shop.

3. Approximately two weeks after pawning the rifle, Petitioner moved to Texas to live with his mother and sister and to enter an AA program. Prior to this move, Petitioner and his father went to the pawn shop to redeem the rifle.

4. In Texas, Petitioner obtained housing and employment, participated in an AA program, and became drug-free.

5. In early 2003, an ATF agent contacted Petitioner in Texas and informed him that there was a warrant for his arrest for possession of a firearm as a convicted felon. Petitioner cooperated with the authorities and turned himself in. He was released by a United States Magistrate Judge in Texas on an unsecured bond.

6. On February 24, 2003, Petitioner returned to Orlando to reside with his father and engaged in various odd jobs.

7. On April 7, 2003, Petitioner provided his pretrial officer with a recent psychiatric report indicating that he was depressed, suicidal, and had a serious drug problem. As condition of his pretrial release, Petitioner entered the Arise program, met with a psychiatrist, and was prescribed three medications, which he began taking on April 21, 2003.

8. By April 22, 2003, it was apparent that the medication were having an extreme, adverse effect on Petitioner. As a result, Petitioner's father met with someone from the Arise program, as well as with the pretrial services officer, and advised them that Petitioner needed to be institutionalized if he was to stay on the medications.

9. As a result of the effects of the new medications, Petitioner left his father's home and again abused drugs. While gone, he missed a urinalysis

> appointment, two mental health treatment classes, and two pre-trial services appointments.
>
> 10. On May 16, 2003, Petitioner called his father pleading for help and indicating that he wanted to turn himself in. Petitioner's father made arrangements for a deputy marshal to pick up of Petitioner, which was done on May 20, 2003.

(Doc. No. 3 at 2-8.)

According to Petitioner, the above facts would have supported an argument that the obstruction of justice enhancement was improper because his actions were not "willful." Petitioner argues that his counsel failed to ensure that "the government . . . prove by clear and convincing evidence that [he] acted consciously with the purpose of obstructing justice." (Doc. No. 3 at 6.) In addition, Petitioner contends that because he did not act willfully, counsel should have argued that Petitioner was entitled to the reduction for acceptance of responsibility.

### A.   *Petitioner's Waiver of Section 2255 Relief in His Plea Agreement*

Petitioner entered into a written plea agreement with the Government (Doc. No. 19). Pursuant to the agreement, Petitioner agreed

> that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal [his] sentence, **directly or collaterally**, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and USSG § 5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), [Petitioner] is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

*Id.* at 6 (emphasis added). During his change of plea hearing, Petitioner specifically acknowledged that he was "giving up, for most purposes, any right to challenge [his] appeal from the sentence." (Doc. No. 38 at 13.)

4

The Government argues that the waiver provision in the plea agreement precludes this Court from considering Petitioner's claim. This position has support from a recent Eleventh Circuit Court of Appeals decision. In *Williams v. United States*, 396 F.3d 1340 (11th Cir. 2005), the court determined that a valid sentence-appeal waiver, entered into voluntarily and knowingly pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. *Id.* at 1342. Therefore, Petitioner's knowing and voluntary waiver in the plea agreement generally bars him from pursuing collateral relief under § 2255 based on ineffective assistance of counsel at sentencing.[3]

In the instant case, this Court cannot conclude that the collateral waiver in the plea agreement was knowing and voluntary. Although the magistrate judge addressed the appeal waiver during the change of plea hearing, the waiver of collateral relief was not specifically discussed. Since it is not clear from the record that Petitioner understood the full significance of his waiver of collateral relief, the waiver cannot be said to limit his ability to pursue relief in the instant § 2255 motion. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) ("To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."), *cert. denied*, 536 U.S. 961 (2002); *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993) ("[F]or a sentence appeal waiver to be knowing and voluntary, the district court must have engaged the defendant about the sentence appeal waiver during the Rule 11 hearing."), *cert. denied*, 513 U.S. 1051 (1994).

---

[3]The *Williams* court left unanswered the question of whether ineffective assistance of counsel claims concerning the validity of the waiver or the plea would survive a waiver. *Williams*, 396 F.3d at 1342 n.2. However, Petitioner has not asserted any such claim in the instant proceeding.

B.      *Merits of Petitioner's Claims*

As set forth above, Petitioner alleges that he received ineffective assistance of counsel regarding his sentencing. The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.[4] "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[4]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

6

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994). This is not one of those cases.

During the course of the sentencing, counsel aptly represented Petitioner and presented much of the information Petitioner now contends should have been provided through either his or his father's testimony. In particular, the Court was made aware of Petitioner's drug history, the circumstances surrounding the pawning of the firearm, Petitioner's move to Texas, his cooperation with the authorities, his return to the Orlando area, his attendance at drug counseling, the adverse effects of the psychiatric medications, and Petitioner's father's attempts to help Petitioner (Doc. No. 33 at 7-9, 11-13; Presentence Investigation Report ¶¶ 5-11, 15, 62, 65-69 and enclosed April 7, 2003, letter from J. Danziger to T. Berry). In addition, the Addendum to the Presentence Report makes it clear that defense counsel objected to the two level increase for obstruction of justice and to not receiving a three level downward adjustment for acceptance of responsibility. Furthermore, the Addendum also cites to the case of *United States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999), the very case upon which Petitioner now premises much of his argument.

It is clear from the record that the Court was provided with the information that Petitioner contends counsel should have presented through live testimony. In addition, counsel and the Court were aware of and considered the impact of *Witherell*. Petitioner simply has not demonstrated that defense counsel's actions were unreasonable or that Petitioner has been prejudiced by any alleged deficiency. His claim of ineffective assistance of counsel must be denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Johnson Carl Roberts IV (Doc. No. 3) is **DENIED**.

2. This case is **DISMISSED** with prejudice.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case. A certified copy of this Order and the judgment shall also be filed in criminal case number 6:03-cr-043-Orl-19DAB.

4. The Clerk of the Court is directed to terminate the § 2255 motion (Criminal Case Doc. No. 37) filed in criminal case number 6:03-cr-043-Orl-19DAB.

**DONE AND ORDERED** at Orlando, Florida, this __2nd___ day of May, 2005.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies to:
sa 5/2
Johnson Carl Roberts IV
Counsel of Record